UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LORI LYNN HEETHUIS,

      Plaintiff,

                                      Case No. 1:19-cv-00940

-vs-

                                       HON:  PAUL L. MALONEY

COUNTY OF MUSKEGON; and,
RYAN BOIKE, Individually,

      Defendants.

_____/

| | |
|---|---|
| STEPHEN R. DREW (P24323) | ROSATI SCHULTZ JOPPICH |
| ADAM C. STURDIVANT (P72285) | & AMTSBUECHLER PC |
| DREW, COOPER & ANDING | LAURA S. AMTSBUECHLER (P36972) |
| Attorneys for Plaintiff | MELANIE M. HESANO (P82519) |
| 80 Ottawa Avenue, NW, Suite 200 | Attorneys for Defendants |
| Grand Rapids, MI 49503 | 27555 Executive Drive, Suite 250 |
| (616) 454-8300 | Farmington Hills, MI 48331 |
| sdrew@dca-lawyers.com | (248) 489-4100 |
| asturdivant@dca-lawyers.com | lamtsbuechler@rsjalaw.com |
| | mhesano@rsjalaw.com |

_____/

**DEFENDANTS' REPLY TO PLAINTIFF'S
RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

The 2011 unsigned document attached to Plaintiff's Brief, ECF No. 102-1, PageID.991-993, is inadmissible hearsay and not relevant to this case.  Nothing about this document can be relied upon as evidence in this matter, and it would be the subject of a motion in limine before a trial.

Plaintiff fails to meet her burden of offering admissible evidence that creates genuine issues of material fact. Most importantly, Plaintiff fails to offer or identify **evidence** of disparate treatment and fails to offer **evidence** which would rebut Defendant's legitimate reasons as pretextual.  Defendants rely on the detailed citations to the record as contained in the moving brief but may repeat those references in this Reply where appropriate.

## STATUTE OF LIMITATIONS

Plaintiff's claims of discrimination and retaliation are based upon her allegations of discrete acts alleged to be "adverse" action. The continuing violations doctrine does not apply. *Nat'l R.R. Passenger Corp v Morgan,* 536 U.S. 101, 113-116 (2002).  Plaintiff's last EEOC claim was filed on July 12, 2019.  Her allegations of discriminatory or retaliatory violations of Title VII in late 2017 and early 2018, prior to 300 days before July 12, 2019, are barred.

## DISCRIMINATION & RETALIATION

Plaintiff has offered no contrary case law or analysis regarding her proofs and she fails to address the honest belief doctrine. Rather, Plaintiff has focused on allegations of fact which she wrongly alleges create a genuine issue of material fact.

**Protected Activity**

Plaintiff has not provided the Court with her testimony from the ACLU *Semelbauer* matter. Her unsupported claim that her testimony related to discrimination is not sufficient to meet her burden. She fails to prove that her testimony was Title VII protected activity.

**Disparate Treatment**

Plaintiff has not produced evidence of disparate treatment. As discussed in Defendants' moving brief and below, her efforts to establish a genuine issue of material fact on this necessary proof requirement fails and her conclusory allegations are insufficient. Significantly, Plaintiff fails to respond to the evidence of similar discipline for similar behavior. ECF No. 93-4, PageID.910-926.

Plaintiff's alleged adverse actions discussed are: 1) her fitness for duty exam and related Family Medical Leave time, 2) the 11/27/17 written reprimand, 3) the January 24, 2019 written reprimand, 4) the disciplinary write up of 4/23/19 and the circumstances of her separation from employment 5) alleged heightened scrutiny and 6) alleged failure to investigate. Plaintiff has no evidence of any other non-protected corrections deputies who were treated differently under the same circumstances.

Plaintiff's Brief makes unsupported assertions and offers no admissible evidence that there were males (or others who were not protected) who engaged in the same activity (or combination of activities), with the same disciplinary history, who were treated differently. Plaintiff ignores her history and ignores the fact that the written reprimands in 2017 and 2019 were each for a combination of events, not just a singular event to which she refers and mischaracterizes. For example, she inaccurately refers to her misconduct in 2017 as using obscenities when it actually involved yelling and swearing at the Chaplin in front of inmates.  ECF No. 92, PageID.586-587;

ECF No. 92-17 PageID.807-808 Plaintiff mischaracterizes her 2019 reprimand as a reprimand for giving cookies which is a mischaracterization and also contrary to the record. See ECF No. 92, PageID.589-590; ECF No. 23, PageID.843-844; ECF No. 92-15, PageID.788. Also of note is the fact that along with the 2019 reprimand, she was counseled, not disciplined, for the time management issues. *Id*. Furthermore, unlike Plaintiff's reference to others who allegedly used cell phones at work, Plaintiff had repeated cell phone violations *in front of inmates*, which was the basis for part of the 2019 written reprimand. ECF No. 92-23 PageID.843. The fact that the Sheriff did not act on old events to which Plaintiff testified during her deposition is not relevant. ECF No, 92-9, PageID.661-662.

Plaintiff does not offer evidence of others who engaged in the same conduct suggesting emotional instability and were not sent for a fitness for duty. Instead, she mischaracterizes the reasons for the fitness for duty as what she calls "outbursts" and offers her testimony about others who she claims engaged in singular "outbursts." Defendants' moving brief explains that the reasons for Plaintiff's fitness for duty exam involved more evidence of instability than just "outbursts."

Finally, Plaintiff has offered no evidence of others who engaged in the same serious misconduct and untruthfulness which led to her April 23 write up and who were not terminated. She has not produced evidence that others, engaged in the same type of activity under the same relevant circumstances.

There is no evidence of disparate "heightened scrutiny."  Sgt. Vanderlaan also reviewed the dailies of the other swing shift officers and video of swing shift deputy M., leading to his termination.  ECF No.92, PageID.754-755, PageID.758.

**Adverse Action**

Plaintiff's response alleges heightened scrutiny and failure to investigate which presumably are intended to be assertions of adverse action.[1] The sufficiency of Plaintiff's other alleged adverse action has been addressed in the moving brief and was not responded to by plaintiff, with the exception of Plaintiff's analysis of her allegation that the events on and after April 23, 2019. Defendants acknowledge the different adverse action tests for discrimination and retaliation as set forth in *Laster v City of Kalamazoo,* 746 F3d 714 (6th Cir. 2014) and assert that Plaintiff fails to establish sufficiently adverse action except, assuming Plaintiff's allegations to be true for purposes of this motion only, the employment action taken on April 23, 2019. [2]

Generally speaking heightened scrutiny does not constitute an adverse action for purposes of an employment discrimination claim, although it might under certain circumstances for a retaliation claim, when combined with heightened discipline which is not the case here. *Lee v Cleveland Clinic Found,* 676 Fed Appx. 488, 494 (6th Cir 2017); *Golden v Metropolitan Govt. of Nashville,* 263 F Supp 684, 691-694 (2017). Sgt. Vanderlaan's video review and subsequent report contained information that supported the legitimate January 24, 2019 reprimand. His February and March review and report recommended and supported discipline, but Plaintiff was given only a March 11, 2019 order not to use her cell phone while working. ECF No. 92-15, PageID.774; ECF No. 92-23, PageID.850.  There is no evidence of heightened scrutiny leading to heightened or disparate discipline.

---

[1] While some case law also addresses heightened scrutiny as evidence of causation, this is primarily when is temporally related to the alleged protected activity, which is not the case here. *Kenney v Aspen Technologies, Inc.,* 965 F.3d 443, 449-450 (6th Cir 2020); *Hamilton v General Elec.,* 556 F.3d. 428, 435-436 (6th Cir 2009) Plaintiff had no discipline throughout 2018 and the "scrutiny" in 2019 was **in direct response to** documented misconduct.

[2] Suspensions/discipline not served are not adverse action for the discrimination claim. *Lee, infra.,* at 497

The failure to investigate a complaint is only deemed sufficiently adverse if it was both "indifferent and unreasonable." *Hawkins v Anheuser-Busch, Inc.,* 517 F3d 321, 349 (6th Cir 2006). In support of her assertion of failure to investigate, Plaintiff relies in part on Sanford's testimony regarding the 2017 email written by Sgt. Vanderlaan and Deputy Smith, and also in part on Sheriff Poulin's testimony related to the letter written by Ms. Streng in January of 2018. The testimony does not establish any actual complaints of which either the Sheriff or Undersheriff were aware. The note of Ms. Streng is a therapist's note and mentions concerns about <u>potential</u> retaliation. ECF No. 103-8 PageID.1192. The information in the December 2017 statements provided by Vanderlaan and Smith where not interpreted as complaints by Plaintiff due to the context, which is reasonable. ECF No. 102-4 PageID.1083. ECF No. 93-1 PageID.887-890. There is no evidence that the Sheriff's Office failed to investigate claims under circumstances that were indifferent or unreasonable.

### Defendants' Actions Were Legitimate and There Is No Evidence Of Pretext

Defendants have articulated legitimate reasons for the actions taken. In order to survive summary judgment, Plaintiff must produce admissible evidence of pretext. *McDonnell Douglas v Green,* 411 US 792 (1973). This requires more than mere allegations of disparate treatment. *Miles v South Central Human Resource Agency,* 946 F3d 883, 887-888 (6th Cir 2020). Plaintiff fails to offer admissible evidence to support a finding that any of the alleged adverse action was taken because of discriminatory intent or would not have occurred but for retaliatory intent as is her burden.[3] *Bostok v Clayton County Georgia,* 140 S.Ct. 1731 (2020); *University of Texas Southwestern Medical Center v Nassar,* 133 S.Ct.2517; 570 US 338 (2013)

---

[3] The case of *Ballanger v Bunge Foods,* 238 F3d 410 (2000) which was cited by Plaintiff does not support her claim. The Court in *Bunge* granted summary judgment for many of the reasons that Heethuis's case should be dismissed. i.e. Ballanger failed to rebut Bunge's articulated non-discriminatory action.

**2017**

Plaintiff offers no evidence that the decisions in 2017 were not legitimate or were pretextual. Plaintiff mischaracterizes her actions in 2017 with no evidence. Furthermore, she offers no evidence that she did not actually engage in the actions that led to the 2017 discipline and the fitness for duty exam. There is no evidence that the decisions in 2017 had no basis in fact. There is no evidence that Plaintiff uncontroverted actions were insufficient to explain the action taken by the Sheriff.

Plaintiff seemingly attempts to establish pretext as to the 2017 actions by suggesting that her behavior and actions did not actually motivate the written reprimand and fit for duty exam. She does so by mischaracterizing the facts, alleging disparate treatment (which does not exist) and by attacking the way the psychological exam was done. To the contrary, Plaintiff was sent for the fitness for duty exam, and temporarily taken off work, for legitimate reasons. ECF No. 92 PageID.583-588. The evidence is clear that the requested psychological exam was due to more than "outbursts." *Id.* As admitted by Plaintiff, she could not, and did not, get over what she claims to have occurred many years prior.  ECF No.102, PageID.953 She often talked about it, talked about her mental health, and also talked about her stress related to her husband's illness. This reached a point where it appeared to interfere with her job in late 2017. ECF No. 93-1, PageID.887-890. This behavior and emotional instability interfered with her performance at work in ways that were apparent to all and it created a hardship for her co-workers. *Id.* The emails of other employees referenced in the letter to Dr. Auffrey were written after being requested by Plaintiff's Sergeant, not the Sheriff or Undersheriff. ECF No. 93-1, PageID.890. See also Defendants' Exhibit 28, Burton Email. Defendants have articulated specific reasons for sending Plaintiff for a fitness for duty exam which are supported by evidence and were directly related to Plaintiff's job duties. ECF

No. 92-10 PageID.584, PageID.690, PageID.693-694, PageID.696. After the three events which caused concern, the Undersheriff and Sheriff met with Plaintiff to discuss their concerns and offer help. She confirmed that she was experiencing stress and difficulty. ECF No. 92-9, PageID.657-658; ECF No. 92-10, PageID.693-694. Dr. Auffrey had done the Sheriff's Office exams for many years and was familiar with the job description. Undersheriff Sanford sent the letter explaining the background as requested by Dr. Auffrey. ECF 92-10, PageID.584, PageID.690, PageID.693-694.

Plaintiff's reliance on *Denhof v City of Grand Rapids,* 494 F3d 534 (6th Cir 2007) is misplaced because that case was quite different. There is nothing in the record in this case to support a finding that the Sheriff's reliance on Dr. Auffrey's report was not reasonable. Here, Plaintiff's apparent mental difficulties were related to her allegation that she had been assaulted, and it was reasonable and necessary to give Dr. Auffrey the background of those events. There is nothing in Dr. Auffrey's report to suggest that he was unduly influenced by Sanford's letter. ECF No. 93-1, PageID.883-884.[4] Plaintiff's suggestion that Auffrey must have been improperly influenced because he found her unfit is unsupported. Plaintiff attacks the professional actions of Auffrey to question the validity of his opinion. However, there is no evidence that this was the letter by Sanford was sent with the intent to get a finding that Plaintiff was not fit, or that the alleged professional failings of Auffrey were or should have been known to the Sheriff at the time he acted on the opinion. Sheriff Poulin relied upon the opinion of a professional trusted by the Sheriff's Office for many years, and there is no evidence to suggest that he should have had reason to question Dr. Auffrey's professionalism. Auffrey's recommendation to keep Plaintiff off work pending a re-evaluation in 60 days and pending a psychiatrist's opinion regarding the effects of

---

[4] ECF No. 93-1, PageID.883-884 contains the signed copy of Dr. Auffrey's report and opinion. Plaintiff attached an incomplete copy of Auffrey's opinion.

Plaintiff's medication, was not something that a lay person would reasonably question.[5] As can be seen from Plaintiff's Exhibit 17, Plaintiff sent the reports of her mental health professionals on February 2, 2018. ECF No. 102-9, PageID.1079. It was legitimate and reasonable for the Sheriff to wait until Dr. Auffrey saw Plaintiff on February 13 before returning her to duty. After the Sheriff received the report clearing Plaintiff for return, he promptly did so. It was upon HR recommendation that Plaintiff was put on FMLA and received pay. *Id.*  Nothing about the decision to send Plaintiff for fitness for duty, the interaction with the doctor, or the time to return her to duty is like the *Denhof* matter.

The 2017 written reprimand for two undisputed events, which included yelling obscenities at the Chaplin in front of inmates, and for inattention to duty due to use of her cell phone was legitimate and Plaintiff presents no evidence that it was pretextual.

## 2018

The fact that Plaintiff received no discipline in 2018 and received only legitimate counseling, is not disputed.

## 2019

When addressing the events of 2019, Plaintiff does not dispute Defendant's factual record of the events and does not dispute the factual basis for Defendants' action. Further, she does not argue pretext by providing evidence that her actions were not sufficient to warrant the response.

---

[5] The record would show that Plaintiffs assertions about the validity of Dr. Auffrey's opinion and professionalism are not correct, but those fact issues are not relevant to this motion. Dr. Auffrey did not offer an opinion on medication. He clearly only asked that such an opinion be obtained by a medical doctor. Dr. Auffrey's testimony revealed that there was more to the MMPI and interview of Plaintiff than plaintiff suggests. Also of note, but not strictly relevant to this motion is the fact that through her exhibits related to her mental health professionals, Plaintiff apparently wants this court to believe her inconsistent claim that her mental state was affected by what she alleged to have occurred several years prior, and also accept Plaintiff's argument that the Sheriff could not legitimately question whether Plaintiff's behavior at work, which was allegedly related to those long ago events, was cause for concern. See Plaintiff's Exhibits 7 & 8.

8

Rather, she again attempts, but fails, to establish pretext by arguing that Plaintiff's misconduct was not the real reason for the actions taken.

Sergeant Vanderlaan was legitimately monitoring the activities of the newly created swing shift in early 2019. ECF 92-14, PageID.757-758. He began the review of video of Plaintiff only after January 10, 2019 when she did not perform her laundry duties, lied about it, and claimed not to have time to get her work done. ECF No. 92-14, PageID.753, PageID.756-757, PageID.762-763; ECF No. 92-15, PageID.779-792, PageID.774 There is no evidence that Vanderlaan reviewed Plaintiff's work under circumstances suggesting retaliatory intent. Plaintiff offers only unsupported speculation to controvert the testimony that the only time that Vanderlaan reviewed Plaintiff's video at the request of the Undersheriff was after Plaintiff lied during the April 17, 2019 hearing. ECF No. 92-14, PageID.753; ECF No. 102-4, PageID.1037; ECF No. 92-15, PageID.765-768. Vanderlaan's email to Captain Brown does not suggest that he was bypassing Jail Administrator Lt Burns.  Vanderlaan's initial email to Captain Brown in which he sought advice stated that he was emailing Captain Brown because Lt. Burns was on vacation. ECF No. 92-15, PageID.794. When following up regarding later violations, Vanderlaan emailed both Captain Brown and Lt. Burns. ECF No. 92-15, Page ID.765-768

Plaintiff's January 24, 2019 reprimand for use of her cell phone in front of inmates and for improper inmate contact when she concealed and passed cookies, coupled with time management counseling, was the result of specific and uncontroverted information found during the January video review. ECF No. 92-23, PageID.841-844.  There is no evidence that it was pretextual.

Vanderlaan's continued review of Plaintiff's performance and time management in February and March of 2019 was legitimate under the circumstances. Significantly, Vanderlaan found several documented violations that he brought to the attention of Lt. Burns and Captain

Brown for which Plaintiff was NOT disciplined. ECF No. 92-15, PageID.770-778. She received only a March 11, 2019 order prohibiting use her cell phone which was a reasonable and legitimate response to documented and legitimate concerns. ECF No, 92-23, PageID.850.

The April 23, 2019 write up giving Plaintiff the choice of either termination, or a LCA coupled with suspensions and an order to stop talking about the past events, was legitimate in light of Plaintiff's actions as detailed in Defendants' moving brief. Significantly, Plaintiff offers no evidence that the events leading to the April 23 discipline did not occur as alleged. Plaintiff offers no evidence to dispute the fact that her behavior and actions were sufficient to warrant termination. Plaintiff does not challenge the fact that the offer of a last chance agreement in lieu of termination under the circumstances is legitimate. She does not offer evidence that her actions were not the real reasons for the discipline to be issued. In short, Plaintiff offers no evidence of pretext related to the disciplinary write up of April 23, 2019.

Plaintiff argues that she was effectively terminated because the LCA contained release language which she would not accept and because she claims that Human Resources made misrepresentations pertaining to insurance. These potential fact issues are of no consequence to this motion because termination from employment would have been legitimate given Plaintiff's misconduct and Plaintiff has offered no evidence that the disciplinary charges which included termination had she not signed the LCA were pretextual. The LCA was in lieu of termination. ECF No. 92-23, PageID.848-849. When presented with the LCA, Plaintiff had the choice to accept the LCA or be terminated from employment. Plaintiff does not dispute the fact that the "release" language in the LCA is in all other LCA's.[6]  There is no evidence that it was added to retaliate or

---

[6] As noted by Plaintiff's brief, an employee signing a LCA gives up the right to grieve the discipline and discipline within the term of the LCA, and that is the reason for release and for the union's involvement in the release language. The unpublished case of *Jewitt v Mesick Consolidated Schools* cited by Plaintiff and the referenced unpublished case of *Miles v Bay City,* are factually different and not persuasive.

discriminate against Plaintiff.  The facts as alleged by Plaintiff do not prove that she was "forced" to sign the LCA, but whether she was is irrelevant. As stated by Plaintiff, she later reconsidered and stated she wanted to retire, then changed her mind and quit. Later, she wanted to revoke the LCA which she knew should have meant termination. Again, those circumstances don't change the analysis. Plaintiff was separated from employment, which would have been the result had she been terminated. The fact that Plaintiff was offered a LCA to avoid termination, and that it contained standard language that she allegedly could not accept, does not evidence discrimination or retaliation. Plaintiff cannot survive Summary Judgment because Plaintiff's behavior and actions leading up to April 23 legitimately warranted termination and she has offered no evidence of pretext.

Finally, as discussed in the moving Brief, there is evidence that the Sheriff had an honest belief in the proffered basis for the employment actions which arose from reasonable reliance on particularized facts. Plaintiff cannot establish pretext. *Upshaw v Ford Motor Co.*, 576 F3d 576 (6th Cir. 2009)

## EAVESDROPPING

Plaintiff's eavesdropping claim fails because she cannot establish that she reasonably expected the recorded conversation to be private. Plaintiff argues that her claim that she reasonably expected her conversation to be private must be question of fact.  As recognized in *Barnett v Norman Yatooma & Assocs.,* 207 WL 840880 (CA Mich 2007), this is not always true.  As in *Barnett* and the case of *Bowens v Ary*, 489 Mich 851 (2011), the Court can find as a matter of law that no reasonable jury could conclude that Plaintiff reasonably expected her words to be private.[7] There is no genuine issue of fact to warrant trial concerning whether the conversation at issue

---

[7] This *Bowens* case was previously incorrectly cited in Defendants' moving Brief ECF No. 92, PageID.611.

constituted a "private conversation." This aspect of Plaintiff's eavesdropping claim can be analyzed from two perspectives, and under both, her claim fails.

First, Plaintiff has admitted that she was not in the bathroom when she had the recorded conversation.  When first interviewed on April 11, 2019, she stated that she was on the phone with Riddle, her Union Representative. Although she stated that this call with Riddle had been in the bathroom, she also stated that she opened the door, walked out and continued to talk during this conversation. ECF No. 92-20, PageID.820-823. Furthermore, Plaintiff was aware that there was a recording of the call. ECF No. 92-20, PageID.823-825.   Although Plaintiff said that she believed the recording to be illegal, when she was told that a recording of her statements in an open area was not illegal, she acknowledged and did not dispute the fact that her statements were in the open. ECF No. 92-20, PageID.824. When next interviewed on April 17, and confronted with the fact that Riddle denied the conversation, she listened to the recording and stated that the recorded conversation was not the one with Riddle and that it took place in the office area.  ECF No. 92-24, PageID.852-857. When asked for her call log on April 17, Plaintiff stated that she had deleted records of her calls from March 24, making them unavailable for review during the disciplinary process. ECF No. 92-12, PageID.710.

Alternatively, when analyzing Plaintiff's claim with the assumption that her deposition testimony (which is contrary to her recorded statements) is true, Plaintiff's claim still fails for lack of genuine issue of material fact regarding whether Plaintiff reasonably expected the conversation to be private. First, Plaintiff's previous inconsistent statements would be taken into account by a jury and would negate her current allegation that she had a reasonable expectation of privacy.

Plaintiff argues that Boike's testimony regarding the circumstances of the recording must not be true based upon the content of reports written by other individuals who were not present on

March 24th regarding what they had been told. These hearsay documents, and the unclear testimony about them, do not create a question of fact regarding whether Plaintiff was already in the bathroom making the call at the time Boike arrived to work the control room because Plaintiff testified to the contrary at her deposition.  Plaintiff admitted that Boike was seated at the console when she arrived at the 3rd floor control room. Plaintiff testified that Boike was at the console, that he buzzed her in, that she talked to him, and that she went into the bathroom.  ECF No. 92-12, PageID.710. This is not inconsistent with Boike's testimony that she was in the office area when he recorded her.

Finally, and most importantly, the testimony of Plaintiff clearly establishes circumstances through which she could not have had a reasonable expectation of privacy, even assuming her testimony to be true.  Those detailed admissions, along with reference to the record, have been cited in Defendants' moving Brief. ECF No. 92, PageID.591-592.

## CONCLUSION

Plaintiff has not offered admissible evidence of any violation of law based upon which a reasonable jury could find in her favor. Plaintiff's effort to use the volume of her unsupported allegations to create the appearance of a question of fact should not be accepted.

Respectfully submitted,

ROSATI SCHULTZ JOPPICH
& AMTSBUECHLER, P.C.

s/Laura S. Amtsbuechler
Attorney for Defendants
27555 Executive Drive, Suite 250
Farmington Hills, MI 48331
(248) 489-4100
lamtsbuechler@rsjalaw.com
(P36972)

Date:  April 21, 2021

13

**PROOF OF SERVICE AND CERTIFICATE OF COMPLIANCE WITH LCivR 7.2**

I hereby certify that on April 21, 2021, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the attorneys of record identified in the caption. In addition, I forwarded a copy, by e-mail, to the non-ECF participating attorneys of record.  I also certify that this Reply Brief was created using Microsoft Word 2016, and that the Reply Brief contains 4063 words in the text and footnotes, exclusive of the caption, index, signatures, and this certificate.

s/Julie Doll